**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, COMCAST CORP., COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, AND COMCAST OF HOUSTON, LLC,<br><br>*Defendant*. | CASE NO. 2:25-cv-00914-JRG-RSP<br><br>(Member Case under Lead Case No. 2:25-cv-00921-JRG-RSP)<br><br>**First Amended Complaint for Patent Infringement**<br><br>**JURY DEMANDED** |

**FIRST AMENDED COMPLAINT FOR**
**PATENT INFRINGEMENT AGAINST COMCAST**

Plaintiff Headwater Research LLC ("Headwater") files this first amended complaint against Defendants Comcast Cable Communications, LLC, d/b/a Xfinity, Comcast Corp., Comcast Cable Communications Management, LLC, and Comcast of Houston, LLC (collectively, "Comcast" or "Defendants"), alleging infringement of U.S. Patent Nos. 8,631,102, 8,799,451, and 8,023,425. The Accused Instrumentalities are mobile electronic devices, including mobile phones and tablets used, made, offered for sale, sold, and/or imported by Defendants in the United States and supplied by Defendants to customers in the United States, Defendants' cellular networks, servers, and services made, used, offered for sale, sold, and/or imported by Defendants in the United States as well as devices used, offered for sale, and/or sold by Defendants in the United States, that operate on Defendants' network, such as Defendants' mobile virtual network operator (MVNO) Xfinity Mobile.

**BACKGROUND**

1. This complaint arises from Defendants' infringement of the following United States patents owned by Headwater, each of which relate to wireless communications technology: United States Patent Nos. 8,023,425 ("'425 patent"), 8,631,102 ("'102 patent") and 8,799,451 ("'451 patent") (collectively, "Asserted Patents").

2. Dr. Gregory Raleigh—the primary inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and a BS in Electrical Engineering from Cal Poly San Luis Obispo. He is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

3. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless communications technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

4. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

5. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the information-carrying capacity of wireless networks.

6. Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

7. After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks's chipset products significantly improved the speed and reliability of Wi-

Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

8. Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in the widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), as well as 802.11ax (Wi-Fi 6).

9. After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

10. In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and the Headwater team.

11. Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users

can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

12. Since 2011, mobile device data demand has exploded—increasing by almost 400%—with each user consuming approximately 11.5 gigabytes of data per month. In the aggregate, this equates to approximately 90 exabytes of data consumption per month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3. For context: a single exabyte of data is equivalent to one billion gigabytes of data. Said another way, if one gigabyte is the size of the Earth, then an exabyte is the size of the sun. *See, e.g.*, https://www.backblaze.com/blog/what-is-an-exabyte/.

13. And mobile device data demand shows no sign of slowing down. Between now and 2027, mobile data demand is projected to increase more than three-fold, from 90 exabytes per month to a staggering 282 exabytes per month, with each user consuming an average of 41 gigabytes of data each and every month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-calculator?up=2&bp=1&v=0&c=2; https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3.


Mobile data traffic
Unit: EB/month
All technologies
All devices
Year: 2011 - 2027
Source: Ericsson (June 2022)
300
250
200
150
100
50
0
2011 2012 2013 2014 2015 2016 2017 2018 2019 2020 2021 2022 2023 2024 2025 2026 2027
All technologies


Ericsson Mobility Calculator
Your example of calculated monthly consumption.
11.45 GB
World average 2027 average monthly consumption.
40.99 GB
0.9 GB (7.8%)
1.9 GB (16.5%)
1.88 GB (16.3%)
3.76 GB (32.7%)
2.37 GB (20.6%)
4.5 GB (11%)
6.52 GB (15.9%)
4.45 GB (10.9%)
6.84 GB (16.7%)
7.3 GB (17.8%)
5.7 GB (13.9%)
Downloads
Messaging traffic
App traffic
Audio streaming
Video streaming

14. Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also providing greater flexibility to carriers and device manufacturers, allowing them to reduce costs while simultaneously improving their devices and services.

15. The Headwater technologies disclosed in the Asserted Patents laid the groundwork for many of the infringing features and functionalities that help device manufacturers, wireless carriers, and customers reduce data usage and network congestion, extend battery life by decreasing power consumption, and enable users to stay connected.

## PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT

16. Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

17. Headwater is the owner of U.S. Patent No. 8,023,425, titled "Verifiable service billing for intermediate networking devices," which issued September 20, 2011. A copy of the '425 patent is attached to this complaint as Exhibit 1.

18. Headwater is the owner of U.S. Patent No. 8,631,102, titled "Automated device provisioning and activation," which issued January 14, 2014. A copy of the '102 patent is attached to this complaint as Exhibit 2.

19. Headwater is the owner of U.S. Patent No. 8,799,451, titled "Verifiable service policy implementation for intermediate networking devices," which issued August 5, 2014. A copy of the '451 patent is attached to this complaint as Exhibit 3.

## DEFENDANTS AND THE ACCUSED INSTRUMENTALITIES

20. Defendant Comcast Cable Communications, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard., Philadelphia, Pennsylvania 19103. Comcast Cable Communications, LLC may be served through its registered agent Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801.

21. Defendant Comcast Corporation is a Pennsylvania corporation with its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard., Philadelphia, Pennsylvania 19103. It is registered to do business in the state of Texas and may be served through its registered agent at 211 E. 7th Street, Suite 620, Austin, TX 78701.[1]

22. Defendant Comcast Cable Communications Management, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard., Philadelphia, Pennsylvania 19103. Comcast Cable Communications Management, LLC may be served through its registered agent at 211 E. 7th Street, Suite 620, Austin, TX 78701.[2]

23. Defendant Comcast of Houston, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard., Philadelphia, Pennsylvania, 19103. Comcast

---

[1] https://comptroller.texas.gov/taxes/franchise/account-status/search/12700007987.
[2] https://comptroller.texas.gov/taxes/franchise/account-status/search/12320847846.

of Houston may be served through its registered agent at 211 E. 7th Street, Suite 620, Austin, TX 78701.[3]

## JURISDICTION AND VENUE

24. This action arises under the patent laws of the United States, Title 35 of the United States Code.

25. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

26. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b).

27. Comcast is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

28. This Court has general and specific personal jurisdiction over the Defendants under the laws of the State of Texas at least because Comcast has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Comcast would not offend traditional notions of fair play and substantial justice. Comcast, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in Texas, and commit acts of infringement of Headwater's patents in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the asserted patents, including without limitation the Comcast tablets and phones

[3] https://comptroller.texas.gov/taxes/franchise/account-status/search/12053767773.

accused of infringement in this case.

29. Comcast, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

30. Venue is also proper in this district because Comcast has a regular and established place of business and has committed acts of infringement in this district.

31. On information and belief, Comcast, directly and/or through subsidiaries or intermediaries, maintains a permanent physical presence within the Eastern District of Texas. On information and belief, Comcast, directly and/or through subsidiaries or intermediaries, maintain an office and/or a structure in at least Collin County and Liberty County, Texas.[4] *See, e.g.*, https://www.houstonpublicmedia.org/articles/news/business/2024/03/25/481597/comcast-expanding-fiber-optic-infrastructure-internet-service-in-northern-outskirts-of-houston-area/ (last accessed August 27, 2025) (stating that Comcast is investing more than $265 million to reach 100,000 potential new customers by end of 2024 including in Liberty county).

32. Comcast advertises in the Eastern District of Texas, including but not limited to advertising the geographic coverage of the Xfinity networks within this District. *See, e.g.*, https://texas.comcast.com/2025/07/01/xfinity-launches-simple-all-inclusive-internet-plans/ (last accessed August 27, 2025) (stating that "[a]ll plans include a line of Xfinity Mobile at no additional cost for a year."). By way of example and without limitation, Comcast website provides a coverage

[4] *Touchstream Tech, Inc. v. Comcast Cable Commc'ns, LLC* et al., Case No. 2-23-cv-00692-JRG, Dkt. No. 49 (E.D. Tex., May 2, 2024).

map that advertises Xfinity current 5G wireless coverage in and around Marshall, Texas.[5]




**COUNT 1 – INFRINGEMENT OF THE '425 PATENT**

33. Headwater incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

34. On September 20, 2011, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,023,425, titled "Verifiable service billing for intermediate networking devices." Ex. 1.

35. Headwater is the owner of the '425 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

36. The written description of the '425 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

[5] *See, e.g.*, https://www.xfinity.com/mobile/learn/network-coverage

37. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '425 patent, and Headwater is entitled to damages for Defendants' past infringement.

38. Defendants have directly infringed (literally and equivalently) and induced others to infringe the '425 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '425 patent and by inducing others to infringe the claims of the '425 patent without a license or permission from Headwater, such as for example inducing any users of the Accused Instrumentalities to perform the patented methods of the '425 patent.

39. Exhibit 4 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '425 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

40. Defendants knowingly and intentionally induce and contribute to infringement of the '425 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or have been willfully blind to the '425 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the '425 patent, and through at least the filing and service of this Complaint.

41. Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '425 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '425 patent, thereby specifically intending for and inducing their customers to infringe the '425 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include

providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

42. Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’425 patent.

43. Defendants have induced, and continue to induce, infringement of the ’425 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions on the use of the Accused Instrumentalities; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

44. Headwater has been damaged by Defendants’ infringement of the ’425 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – INFRINGEMENT OF THE ’102 PATENT

45. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

46. On January 14, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,631,102, titled “Automated device provisioning and activation.” Ex. 2.

47. Headwater is the owner of the ’102 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

48. The written description of the ’102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’102 patent, because there are no unmarked articles subject to a duty to mark, and Headwater is entitled to damages for Defendants’ past infringement.

50. Defendants have directly infringed (literally and equivalently) and induced others to infringe the ’102 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the ’102 patent and by inducing others to infringe the claims of the ’102 patent without a license or permission from Headwater.

51. Exhibit 5 provide a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’102 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

52. Defendants knowingly and intentionally induce and contribute to infringement of the ’102 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or were willfully blind to the ’102 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’102 patent, and through at least the filing and service of this complaint.

53. Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’102 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the

Accused Instrumentalities, despite their knowledge of the ’102 patent, thereby specifically intending for and inducing their customers to infringe the ’102 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

54. Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’102 patent.

55. Defendants have induced, and continue to induce, infringement of the ’102 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

56. Headwater has been damaged by Defendants’ infringement of the ’102 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT 3 –INFRINGEMENT OF THE ’451 PATENT**

57. Headwater incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

58. On August 5, 2014, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,799,451 titled “Verifiable service policy implementation for intermediate networking devices.” Ex. 3.

59. Headwater is the owner of the ’451 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

60. The written description of the ’451 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

61. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’451 patent because there are no unmarked articles subject to a duty to mark, and Headwater is entitled to damages for Defendants’ past infringement.

62. Defendants have directly infringed (literally and equivalently) and induced others to infringe the ’451 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the ’451 patent and by inducing others to infringe the claims of the ’451 patent without a license or permission from Headwater.

63. Exhibit 6 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’451 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

64. Defendants knowingly and intentionally induce and contribute to infringement of the ’451 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Defendants have had knowledge of or has been willfully blind to the ’451 patent and the infringing nature of the Accused Instrumentalities, at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’451 patent, and through at least the filing and service of this complaint.

65. Despite this knowledge, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’451 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the ’451 patent, thereby specifically intending for and inducing their customers to infringe the ’451 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

66. Defendants have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’451 patent.

67. Defendants have induced, and continue to induce, infringement of the ’451 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

68. Headwater has been damaged by Defendants’ infringement of the ’451 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

69. Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A. A judgment in favor of Headwater that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B. A judgment and order requiring Defendants to pay Headwater past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C. A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

D. A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

E. A judgement that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

F. A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater' reasonable attorney's fees and costs; and

G. Any and all other relief to which Headwater may be entitled.

Dated: October 31, 2025

Respectfully submitted,

*/s/ Marc Fenster*

Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
James Milkey
CA State Bar No. 281283
Email: jmilkey@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Qi Peter Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025

Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**